UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**STANFORD EUGENE LARKIN,**<br><br>Defendant. | 2:21-CR-20755-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE (ECF NO. 32)** |

Defendant Stanford Eugene Larkin, representing himself, has filed an Emergency Motion for Compassionate Release based on his history as a heart transplant patient and his claim that he is not receiving necessary medications and treatment. ECF No. 32. In March 2023, the Court sentenced Larkin to 108 months of imprisonment after he was convicted of possession with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. The Court ordered expedited briefing, and the Government responded and opposed Larkin's request. ECF No. 34. The Court has carefully considered the briefing and will **DENY** Larkin's motion for the reasons stated below.

## I. BACKGROUND

In March 2023, Larkin was convicted following a guilty plea of (1) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possessing a firearm in furtherance of drug trafficking, in

1

violation of 18 U.S.C. § 924(c); and (3) possessing with the intent to distribute cocaine and cocaine base, in violation of 21 § U.S.C. 841(a)(1)—all of which he committed within four months of having been released from serving a federal sentence for possessing a firearm as a convicted felon. Judgment, ECF No. 30; Government's Sentencing Memoranda, ECF No. 28, PageID.203. On the day he was arrested, officers found in a backpack in Larkin's possession four different types of drugs packaged across multiple bags, two iPhones, rubber gloves and digital scales, and they also found a loaded Glock pistol underneath the driver's seat of Larkin's vehicle. That Glock pistol was linked to an unsolved shooting that occurred just the month before. ECF No. 28, PageID.211–13. During a subsequent search of Larkin's residence that same day, officers found more weapons, ammunition, and cash. *Id.* PageID.208. Larkin is currently scheduled for release in September 2029.

Larkin has an extensive criminal history, having received fourteen adult convictions by the age of 32, including several drug and firearm convictions and multiple arrests, all before the instant offenses. *Id.* PageID.213–15. In fact, Larkin incurred five convictions and seven arrests *after* undergoing his heart transplant in May 2016. *Id.* PageID.217.

In addition, in early 2024, while serving his current term of imprisonment, Larkin was disciplined for a drug-smuggling conspiracy within the prison. Disciplinary Report, ECF No. 34-1. He and his co-

conspirators obtained synthetic drugs and snuck them into prison disguised as legal mail. *Id.* Larkin was fined $500, lost 41 days of good-conduct time, and lost phone privileges for six months. *Id.*

Larkin now moves, pro se, for emergency consideration of compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 32. In support of his motion, Larkin states that he received a heart transplant in 2016, and that his health is deteriorating because he is repeatedly denied necessary medical care, including anti-rejection medicines, antibiotics, and routine hematological screening, which has led to heart palpitations and pain. *Id.*

The government has responded and opposes Larkin's motion. ECF No. 34. The government argues that Larkin has failed to exhaust his administrative remedies, as required by 18 U.S.C. § 3582(c). The government further contends that Larkin cannot establish extraordinary and compelling reasons for compassionate release because his medical records demonstrate that he continuing to receive adequate medical care for his condition, and that he has been consistently receiving such care for the last half decade that he has been in prison. And finally, the government argues that Larkin's criminal record—both inside and outside of prison—demonstrates that he remains dangerous and thus a sentence reduction would not be consistent with the § 3553 factors.

## II. LEGAL STANDARD

The compassionate release provision set forth in 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, allows the district courts to reduce a term of imprisonment and impose a term of probation or supervised release under certain conditions. Pursuant to this provision, a defendant may move for compassionate release on his own behalf "after (1) exhausting the [Bureau of Prisons ("BOP's")] administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *See United States v. Jones*, 980 F.3d 1098, 1104–05 (6th Cir. 2020) (citations omitted). Exhaustion by one of these avenues is a "mandatory" condition for granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). It is the defendant's burden to establish that he has exhausted all his administrative remedies. *See United States v. Pena-Lora*, No. 15-20695, 2020 WL 3886384, at *1 (E.D. Mich. July 9, 2020) (Cox, J.) (citation omitted). And, if the government properly invokes the exhaustion requirement, the Court is compelled to enforce it. *Alam*, 960 F.3d at 834.

If the mandatory exhaustion requirement is satisfied, courts in the Sixth Circuit next apply a three-step inquiry. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). First, "the court must 'find' that 'extraordinary and compelling reasons warrant [a sentence] reduction.'"

*Id.* (alteration in original) (quoting *Jones*, 980 F.3d at 1101). Second, the Court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.'" *Id.* (quoting *Jones*, 980 F.3d at 1101). Third, the Court must "consider[ ] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.* (alteration in original) (quoting *Jones*, 980 F.3d at 1101). "If each of those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

As to the second factor, the relevant policy statement by the Sentencing Commission is found in United States Sentencing Guidelines Manual § 1B1.13. *Jones*, 980 F.3d at 1108 (citation omitted). Previously, § 1B1.13 applied only to motions filed by the Director of the Bureau of Prisons. *See Elias*, 984 F.3d at 519 (based on the express language of the former section, "§ 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."). However, the Sentencing Commission has amended § 1B1.13 to also apply to compassionate release motions initiated by defendants. *See* Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, 88 Fed. Reg. 28, 254 (May 3, 2023) (effective Nov. 1, 2023); U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2023) ("Upon motion of the Director of the Bureau of

5

Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…")

The now-applicable policy statement provides that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof": (1) the medical circumstances of the defendant, (2) the age of the defendant, (3) the family circumstances of the defendant, (4) whether the defendant was a victim of abuse while in custody, (5) "Other Reasons," and (6) a non-retroactive change in the law if the defendant received an unusually long sentence and has been in prison for at least ten years. *See* U.S.S.G. § 1B1.13(b)(1)–(6). Under the "Other Reasons" provision, a court may consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* at § 1B1.13(b)(5). While rehabilitation alone does not qualify as an extraordinary or compelling reason, it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* at § 1B1.13(d).

As to the third factor, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors account for the defendant's recidivism risk, danger to the public, seriousness of the offense, and how

6

to provide the defendant with "medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)–(D).

District courts may deny compassionate release motions when any of three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the other two. *See Elias*, 984 F.3d at 519. However, if the Court grants a motion for compassionate release, it must address all three factors in its reasoning. *Id.* The defendant bears the burden of establishing a sentence reduction is warranted. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

### III.  DISCUSSION

#### A. Exhaustion Requirement

As stated, a prisoner may move for compassionate release only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement is a mandatory claims-processing rule that must be enforced if raised by the government. *See Alam*, 960 F.3d at 833–34.

Larkin admits he did not submit a request to his warden for compassionate release. ECF No. 32, PageID.337. He states that he believes the warden would deny his motion. *Id.* That is not a basis that would allow an inmate to ignore the exhaustion requirement. Because Larkin admits that he failed to exhaust his administrative remedies, and

the government invokes the mandatory claims-processing rule, the Court could deny the motion for compassionate release without prejudice for failure to exhaust administrative remedies. *See Alam*, 960 F.3d at 833–34. However, the Court further finds that compassionate release is not warranted because (a.) Larkin fails to provide extraordinary and compelling reasons and, (b.) the § 3553(a) factors do not support release.

### B. Extraordinary and Compelling Circumstances

The record is undisputed that Larkin received a heart transplant in 2016. As extraordinary and compelling circumstances, Larkin says he is being regularly denied required anti-rejection drugs, antibiotics, and routine blood screenings, and that his overall health has therefore deteriorated, causing him to experience "heart palpitations" and "traumatic pain in and around [his] implanted heart." ECF No. 32, PageID.340, 342. He does not identify any specific medication he claims he is being denied. He further alleges that the United States Bureau of Prisons is deleting and redacting his medical records and covering up inadequate medical care but provides no support for that allegation. *Id.* PageID.344.

The government argues that Larkin has been in federal custody for more than six years (except for a few months in 2021), and that during that time he has been provided the required medical care and has been able to provide self-care. In support, the government filed, under seal, a copy of Larkin's medical records for the past year. ECF No. 35 (Sealed).

8

The Court has carefully reviewed those records and finds that they show that Larkin has received continuous and adequate medical care. He has been regularly provided his required medications and care, testing, and treatment when necessary, including consultation with and treatment by relevant cardiology specialists. Nothing in these records suggests that the BOP has failed to provide necessary treatment or undue delays in treating Larkin's serious medical conditions, or that the BOP has altered or manipulated any of his medical records. Consequently, Larkin has failed to set forth an "extraordinary and compelling" reason for compassionate release based on his health.[1]

Because Larkin has not satisfied the first element necessary for success on a request for compassionate release, the Court must deny his motion. Nevertheless, the Court also reviews the § 3553(a) factors and finds they too suggest that Larkin's motion should be denied.

---

[1] Larkin cites *United States v. Beres*, No. CR 18-58-BLG-SPW-02, 2023 WL 8809320 (D. Mont. Dec. 20, 2023) in support of his argument that extraordinary and compelling reasons exist for his compassionate release. However, *Beres* is wholly inapposite. In *Beres*, the court granted the defendant compassionate release, expressly *not* because any "medical circumstances" exist, but because the defendant, a former gang member, participated in a "drop out" program which "requires a defendant to provide valuable information to the relevant federal agencies to combat gang activity and could, potentially, endanger the life of a defendant." *Id.* at *2. *Beres* provides no support for Larkin's request for compassionate release based on his medical circumstances.

### C. Section 3553(a) Factors

The § 3553(a) factors include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant. Section 1B1.13(a)(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Such considerations can prohibit the release of violent offenders, including drug dealers. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence.").

Larkin does not address the § 3553(a) factors in his motion, while the government contends that Larkin is ineligible for release under those factors because he is a danger to the community. The nature and circumstances of Larkin's instant offenses weigh strongly against his release. He pled guilty to possessing a firearm as a convicted felon, possessing a firearm in furtherance of drug trafficking, and possessing with intent to distribute cocaine and cocaine base, which he committed only four months into a period of supervised release. ECF No. 30. The weapon Larkin possessed at that time had been used just a month earlier in an unsolved shooting. ECF No. 28. In addition, looking at Larkin's history and characteristics shows that he had fourteen adult criminal

convictions prior to the instant offenses, including multiple drug and weapons convictions and convictions for domestic violence, home invasion, assault, and assault with intent to do great bodily harm. *Id.* And while incarcerated, Larkin incurred disciplinary sanctions for leading and organizing a drug-smuggling conspiracy within the prison. ECF No. 34-2.

The Court further notes that it sentenced Larkin to a below-guidelines, nine-year term of imprisonment less than two years ago, and he has served only a fraction of the imposed sentence.

Accordingly, for all these reasons, this Court does not believe that releasing Larkin early would promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from further crimes by Larkin. In sum, based on this record, Larkin is simply not eligible for the extraordinary remedy of compassionate release.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion for Compassionate Release, ECF No. 32, is **DENIED.**

**IT IS SO ORDERED.**

Dated: February 21, 2025  /s/Terrence G. Berg
　　　　　　　　　　　　　　HON. TERRENCE G. BERG
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE